IN THE UNITED STATES COURT OF

APPEALS FOR THE TENTH CIRCUIT

Case No. 25-3097

Angeliina Lynn Lawson,

Respondent/Appellant,

v.

Jonathan David Lawson,

Petitioner/Appellee

SUPPLEMENT TO MOTION TO CERTIFY CONSTITUTIONAL QUESTION

(Dkt. 28)

# I. INTRODUCTION

Appellant respectfully submits this Supplement in further support of the pending Motion to Certify Constitutional Question (Dkt. 28). That motion remains under submission before the merits panel with no ruling to date. Appellee has filed no opposition to the motion, to Appellant's Opening Brief, or to any other filing. Accordingly, the constitutional question should now be treated as fully briefed and uncontested.

This Supplement is filed pursuant to Fed. R. App. P. 27 and 10th Cir. R. 27.1(A) to reinforce the urgency of certification under 28 U.S.C. § 1254(2). It seeks no new relief, but provides additional historical and factual context underscoring why the following question must be certified to the United States Supreme Court:

"Does 28 U.S.C. § 1443(1), which authorizes removal to federal court for persons denied 'any law providing for equal civil rights,' encompass disability-based rights secured under Title II of the Americans with Disabilities Act, as recognized and enforced pursuant to the Fourteenth Amendment?"

This question is of first impression nationally. It is no longer academic; it is constitutional. Certification is the only mechanism to resolve the escalating conflict

between outdated precedent limiting § 1443(1) to race-based rights and modern civil-rights statutes guaranteeing equal access for disabled litigants.

## II. CONSTITUTIONAL NECESSITY OF CERTIFICATION

Certification is constitutionally necessary because this appeal presents a conflict that no federal appellate court has resolved: whether disabled individuals, when denied access to justice in state courts, can invoke § 1443(1) to secure a federal forum.

### A. ADA Title II Qualifies as a Law Providing for Equal Civil Rights

Enacted under Congress's Fourteenth Amendment authority, Title II of the ADA guarantees "equal access to the courts" and "effective communication" in judicial proceedings. Supreme Court precedent in *Tennessee v. Lane* and *United States v. Georgia* recognizes Title II as civil-rights legislation of constitutional stature. The ADA therefore fits squarely within the statutory language of § 1443(1).

### B. The Record Proves No Forum Exists in Kansas

Exhibit E documents sixteen separate Kansas proceedings in which Appellant was denied accommodations, discovery, and jury trial access following assertion of ADA rights. Summons were withheld, filings suppressed, and hearings conducted

without accommodations. These are not isolated errors but a systemic pattern showing Kansas courts are unwilling or unable to enforce Title II.

## C. Unrebutted Evidence of Fraud Demands Higher Court Resolution

Appellant's Notice of Fraud Upon the Court (Dkt. 12) set forth unrebutted evidence of ex parte orders, fabricated jurisdiction, and record suppression. Fraud on the court destroys confidence in state remedies and requires higher court oversight.

## D. Judicial Duty Requires Certification

Certification is not discretionary in substance. Where state courts and lower federal courts jointly foreclose enforcement of a federal civil rights statute, the appellate court must either resolve the conflict itself or pass it upward. To do nothing would sanction an unconstitutional hierarchy of civil rights. As further outlined in Exhibit F, judicial officers have a constitutional duty to act where federal rights are being extinguished by procedural devices.

Appellant attaches Exhibit G, a consolidated legal analysis containing the full statutory, constitutional, and doctrinal basis for interpreting § 1443(1) to include ADA Title II. While this analysis is not necessary to decide the narrow motion to certify, it is included to preserve the full record and to aid the Supreme Court if the question is certified.

## RELIEF REQUESTED

For the reasons stated above, Appellant respectfully requests that this Court certify the following question to the United States Supreme Court under 28 U.S.C. § 1254(2):

"Does 28 U.S.C. § 1443(1), which authorizes removal where a person is denied a right under 'any law providing for equal civil rights,' include disability-based rights under Title II of the Americans with Disabilities Act, enacted pursuant to the Fourteenth Amendment?"

Certification is the only lawful means to resolve the constitutional paradox now before this Court. In the alternative, Appellant requests that the Court expressly preserve this issue for Supreme Court review in its eventual opinion.

## EXHIBITS ATTACHED

The following exhibits are submitted in support of this Supplement and are incorporated by reference:

- Exhibit E – *Litigation Summary of Systemic ADA Access Failures and Judicial Obstruction in Kansas Courts* (Demonstrating denial of accommodations, discovery, and jury trial across 16 cases)

- Exhibit F – *Sworn Memorial on Judicial Duty and Constitutional Supremacy* (Outlining the judicial oath, Article III boundaries, and fundamental access rights of disabled litigants)

- Exhibit G – *Legal Memorandum: Statutory Construction, Equal Protection, and the Historical Imperative* (Comprehensive legal analysis demonstrating why ADA Title II qualifies as a "law providing for equal civil rights" under 28 U.S.C. § 1443(1))

These exhibits are included to preserve the full record and to assist the Court or any reviewing body in evaluating the constitutional urgency and doctrinal clarity of the certification question.

Respectfully submitted,                    Date: August 28, 2025

/s/ Angeliina Lynn Lawson

Pro Se Appellant

(Address on record)

# CERTIFICATE OF SERVICE

*I certify that on August 28, 2025, the foregoing filing was submitted through the Court's CM/ECF system for electronic docketing. As Appellee has made no appearance, filed no response, and is in default (see Dkt. 37), no additional service is required under Fed. R. App. P. 25 and Tenth Circuit Rule 25.3(C).*

Jonathan David Lawson

(Address on record)

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Pro Se Appellant

_____

Litigation History – Jury Trials and Discovery Denied in 100% of Cases. Each of the sixteen filings had a clear legal basis (ADA retaliation, §1983 civil rights, RICO, removal for federal protection, and appeals). In every case, proceedings were cut off before the merits could be heard — through skipped IFP rulings, withheld summons, suppressed subpoenas, after ADA accommodations were filed or dismissals. Not once has Plaintiff been permitted a jury trial, evidentiary hearing, or full discovery. This pattern compelled the civil RICO filing and the statutory request for reassignment to a three-judge out-of-district panel — a request the District Court has likewise denied.

| Case No. | Court | Year Filed | Core Claims | Outcome | Jury Trial Granted? |
|---|---|---|---|---|---|
| Judge Broomes, Mag. James 2:25-cv-02199 | D. Kan. | 2025 | ADA retaliation, civil rights, custody interference | IFP granted, summons stayed, case stalled | No |
| Judge Broomes, Mag. James 2:25-cv-02171 | D. Kan. | 2025 | ADA retaliation, denial of access, GAL misconduct | IFP granted, stayed, AG shielded from default | No |
| Judge Broomes, Mag. James 2:25-cv-02251 | D. Kan. | 2025 | Civil rights, ADA retaliation, Bolton misconduct | IFP granted, summons withheld 90+ days now | No |
| Judge Broomes, Mag. James 5:25-cv-04045 | 10th Circuit Appeal D. Kan. | 2025 | Circuit Appeal premature remand, Federal removal, ADA protections | Rapid remand within 9 days, no chance to build record, no hearings | No |
| Judge Broomes, Mag. James 6:25-cv-01179 | D. Kan. | 2025 | Civil RICO, ADA retaliation, enterprise | IFP granted, summons stayed, discovery denied | No |

| Case No. | Court | Year Filed | Core Claims | Outcome | Jury Trial Granted? |
|---|---|---|---|---|---|
| Judge John Bryant Leveanworth Dist. Ct. LV-2025-cv-000070 | Kansas Ct. Appeal | 2025 | State appeal of sanctions, ADA retaliation | Defendant defaulted but granted dismissal instead, motion disqualification, sudden sanctioned without trial or hearing | No |
| Judge John Bryant Leavenworth Dist. Ct. (two dockets) | Kansas State Court | 2025 | Custody interference, ADA retaliation, contempt | Coercive dismissal, procedural improper, skipped over IFP, no jurisdiction | No |
| Judge Rhonda Mason Johnson Dist. Ct. JO-2025-cv-623 | Kansas State Court | 2025 | Fraud, misrepresentation | 130 days inaction; no ADA retaliation, motion disqualification, sudden dismissal | No |
| Judge Keven O' Grady Johnson Dist. Ct. JO-2025-DM-1717 | Kansas Ct. Appeal | 2025 | State Appeal of no jurisdiction, ADA retaliation, no cause | Denied; change of venue, ADA accommodations, jury trial | No |
| Judge Eric Godderz Anderson County 2020-DM-131, Fraud on Court | Fed. Removed. Kansas State Court | 2020-ongoing | Fed. removal for no jurisdiction, ADA retaliation, access rights. | Dismissed, not docketed, or labeled "correspondence" | No |
| Judge McEntee Small Claims (5 cases) | Kansas State Court | 2025 | Unilaterally dismissed, no hearing, right after ADA accommodations requested | Dismissed, after proper service of summons and hearing dates set. | No |

Summary

- Total Lawsuits Filed: 16
- Jury Trials Granted: 0
- Pattern: In every case, Plaintiff's constitutional right to a judicial forum was extinguished before the merits could be heard. Courts repeatedly relied on procedural devices — such as stays of service, coerced dismissals, premature remands, blanket discovery denials, and sanctions — or retaliated after ADA accommodation requests. This systemic denial of access demonstrates structural bias and validates the necessity of reassignment to neutral, out-of-district judges under 28 U.S.C. §§ 292(b), 294.

Exhibit F

## MEMORIAL IN SUPPORT OF JUDICIAL DUTY AND CONSTITUTIONAL LAW

## FIRST AMENDMENT RIGHT TO PETITION FOR REDRESS OF GRIEVANCES

This Notice and Demand is made pursuant to the First Amendment to the United States Constitution, which secures the right of the people to petition their government for a redress of grievances. No statutory interpretation, administrative rule, or corporate policy shall be construed to diminish or infringe this constitutionally protected right.

Issued By One of the People, Beneficiary of the Public Trust Established by the Constitutions

## INTRODUCTION

Let it be entered into the public record that this memorial is submitted not as a petition but as a lawful statement of principle, authority, and foundational truth, to make plain what the Constitution secures, what no tribunal may disregard, and

what every officer of government is sworn to uphold. This is not argument for favor, but a reminder of duty.

The People are not governed by fiction, nor bound to procedure masquerading as law. The Constitution is the supreme law of the land. That which is repugnant to it is void.

## OATH TO THE CONSTITUTION IS NOT OPTIONAL

All judicial officers are bound by oath to uphold and defend the Constitution of the United States. This is not a formality, it is a legal and moral obligation to apply only those acts, decisions, and procedures that are in harmony with the Supreme Law of the Land.

"The Senators and Representatives… and all executive and judicial Officers… shall be bound by Oath or Affirmation, to support this Constitution."

United States Constitution, Article VI, Clause 3

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made… shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

United States Constitution, Article VI, Clause 2

Those who sit in judgment are not free to substitute their preferences, statutory

policies, or administrative procedures in place of the supreme Law of the Land.

The judicial oath binds each officer to uphold the Constitution above all.

## CONSTITUTIONAL DUTY IS ACTIVE, NOT PASSIVE

"No state legislator or executive or judicial officer can war against the Constitution

without violating his undertaking to support it."  - Cooper v. Aaron, 358 U.S. 1

(1958)

"Where rights secured by the Constitution are involved, there can be no rule

making or legislation which would abrogate them." - Miranda v. Arizona, 384 U.S.

436 (1966)


The judiciary is not excused from its constitutional duty by silence, complexity, or

administrative convenience. The judicial power must be exercised within the

bounds of the Constitution, and never in circumvention of it.


## THE CONSTITUTION IS THE SOLE SOURCE AND LIMIT OF JUDICIAL
## AUTHORITY

"The judicial Power of the United States, shall be vested in one supreme Court,

and in such inferior Courts as the Congress may from time to time ordain and

establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." - Article III, Section 1, United States Constitution

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection… it is, in legal contemplation, as inoperative as though it had never been passed."

- Norton v. Shelby County, 118 U.S. 425

(1886)

By the trust indenture known as the Constitution for the United States, the People vested the judicial power of the United States in courts of record, to be exercised only by judges nominated by the President and confirmed by the Senate. No other means of appointment is known to the Constitution; no other authority may sit in judgment over the rights of the People.

Where one presumes to act without such appointment, or to operate under the will of the Legislature, the proceeding is not judicial in nature but administrative in character, and void ab initio for want of jurisdiction. The People are not subject to legislative tribunals, nor to administrative actions disguised as judicial process.

The Judiciary exists not to expedite the aims of statute, but to guard the rights secured by the Constitution and to ensure that no power is exercised beyond that which the People have granted. Any officer acting outside that grant ceases to be a judge in law, becoming instead an agent of policy, without lawful power to bind the People.

## ON THE LIMITS OF CONGRESSIONAL POWER

The so-called Federal Rules of Civil Procedure are legislative instruments created by Congress [28 U.S.C. § 2072]. But nowhere in the Constitution is Congress granted the authority to prescribe the manner in which Article III courts shall execute their judicial power. The separation of powers forbids such overreach. Maxim 11a. A delegated power cannot be again delegated. 2 Inst. 597; Black's, 2d. 347; 2 Bouv. Inst. n. 1300.


To allow Congress to dictate how the Judiciary functions is to undo the structure of government ordained by the People. Judicial power is vested by Article III—it is not conferred by Congress, and it is not made subject to Congressional control. No legislative process, no administrative rule, no procedural scheme—however dressed in tradition—can override, replace, or supplant the People's right to due process of law as secured by the Fifth Amendment.


## THE IMMUTABILITY OF MAXIMS OF LAW

In law, as with any science, there exist fundamental principles which form its basis and to which reference must often be made. These are the Maxims of Law. Blackstone likened them to axioms in geometry. Sir Edward Coke called them conclusions of reason—propositions universally assented to, needing no proof or discourse. Black's Law Dictionary (2d ed., 1910) defines a maxim as an established principle of law universally admitted as a correct statement of the law and agreeable to natural reason. The Founders esteemed this foundation: Jefferson praised Coke's Institutes as a fundamental code of the English law, and Rutledge observed that they were almost the foundation of our law.

Maxims of law are not optional, not repealable, and not secondary to statute. They are enduring first principles that govern courts, constrain officers, and mark the lawful boundaries of power. When they are neglected, the door opens to encroachment and deception; when they are honored, justice is secured. Any proceeding that departs from these controlling principles is without lawful footing, no matter how official it looks.

The maxims used in this section are drawn from Charles A. Weisman's "A Selection of Maxims of Law" (1990). They are presented here as controlling guidance for this matter.

Even the Supreme Court of the United States, in a recent unanimous decision, acknowledged the continuing authority of these background principles. In EMD Sales, Inc. v. Carrera, 601 U.S. ___ (Jan. 15, 2025), Justice Gorsuch, concurring with Justice Thomas, reaffirmed that "courts must proceed against a background of common-law adjudicatory principles" — the very maxims that have governed lawful judgment for centuries — and that "it is the judicial duty to declare the law, not to enact it."

Some maxims especially pertinent to this controversy:

51q. A frequent recurrence to fundamental principles, and a firm adherence to justice, virtue, and original law, are indispensably necessary to preserve the blessings of liberty and good government. American Maxim.

51r. As usurpation is the exercise of power, which another has a right to; so tyranny is the exercise of power beyond right, which no body can have a right to. Locke, Treat. 2, 18, 199.

51i. Individual liberties are antecedent to all government. C.L.M.

51b. The government is to be subject to the law, for the law makes the government. C.L.M.

51k. The law is not to be violated by those in government. Jenk. Cent. 7.

51p. The main object of government is the protection and preservation of personal rights, private property, and public liberties, and upholding the law of God. American Maxim.

71j. The welfare of the people is the supreme law. McInerney v. Ervin, (Fla.) 46 So.2d 458, 463; Bacon, Max. reg. 12; 13 Coke, 139.

64ff. A court can only declare what the law is, and whether consistent with the law of God, and the fundamental or constitutional law of society. The State v. Post, 20 N.J.L. 368, 370 (1845).

64a. A judgment given by one who is not the proper judge is of no force and should not harm any one. 10 Coke, 70, 766; Bouv. 133; Fleta, 1. 6, c. 6, s. 7; Broom, Max. 92.

7a. When the form is not observed, it is inferred that the act is annulled. 12 Coke, 7.

68f. Justice is neither to be denied nor delayed. Jenk. Cent. 76, 93.

63q. That law is best which leaves least to the discretion of the judge; that judge is best who leaves least to his own opinion. Broom, Max. 84; 1 Kent, Comm. 478; Bacon, Aph. 8, 46.

65c. An action of a judge which relates not to his office is of no force. Dig. 50, 17, 170; 10 Coke, 76. A judicial act before one not a judge is void. Lofft. 458.

63y. It is the duty of a judge to declare [enunciate] the law, not to enact the law or make it. Lofft, 42; Tray. Leg. Max. 283; Lofft. App. 42.

51c. Obedience makes government, not the name by which it is called. C.L.M.

11g. When anything is commanded, everything by which it can be accomplished is also commanded. 5 Coke, 116

11s. One lawfully commanding must be obeyed. Jenk. Cent. 120.

11w. In the presence of the superior power, the inferior power ceases. Jenk. Cent. 214, c. 53; 13 How. (54 U.S.) 142. The less authority is merged in the greater. Broom, Max. 111

84c. Punishment is due if the words of an oath be false. Black's, 840.


Notice. To act contrary to a controlling maxim is to act outside the law. Any order or enforcement taken in violation of such a maxim is void ab initio and without color of law, and any officer who persists does so outside the oath and at personal liability.

## DUE PROCESS OF LAW IS A GUARANTEE, NOT A PRIVILEGE

"No person shall… be deprived of life, liberty, or property, without due process of law." -Fifth Amendment, U.S. Constitution

Due process of law is not a courtesy extended by courts, it is a non-negotiable constitutional guarantee. The People are entitled to it not because they plead for it, but because it is secured by the supreme law.

The Fifth Amendment's Due Process Clause addressed remaining concerns about the processes that would attend trials before independent judges and juries. It provided that the government may not deprive anyone of "life, liberty, or property, without due process of law." As originally understood, this provision prohibited the government from "depriving] a person of those rights without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England." Sessions v. Dimaya, 584 U. S. 148, 176 (2018) (GORSUCH, J., concurring in part and concurring in judgment) (internal quotation marks omitted); see Erlinger, 602 U. S., at —-_ (slip op., at 6-7). More than that, because it was "the peculiar province of the judiciary" to safeguard life, liberty, and property, due process often meant judicial process. 1 St. George Tucker, Blackstone's Commentaries, Editor's App. 358 (1803). That is, if the government sought to interfere with those rights, nothing less than "the process and proceedings of the common law" had to be observed before any such deprivation could take place. 3 J. Story, Commentaries on the Constitution of the United States §1783, p. 661 (1833) (Story). In other words, "due process of law' generally implied] and include[d] ... judex [a judge], regular allegations, opportunity to

answer, and a trial according to some settled course of judicial proceedings." Murray's Lessee, 18 How., at 280. This constitutional baseline was designed to serve as "a restraint on the legislative" branch, preventing Congress from "mak[ing] any process 'due process of law,' by its mere will." Id., at 276. SEC vs JAKERSY 603 U. S. ____ (2024).

When a court dismisses a cause without addressing the facts raised, or relies upon another litigant's record to issue orders affecting a separate case, it violates the essential character of due process. This is not adjudication; it is administrative disposal. Such acts are void ab initio, without color of law, and any officer persisting therein stands outside the oath and in personal liability.

## NO ONE IS ABOVE THE LAW

"It is a core tenet of our democracy that the People are the sovereign, and the Rule of Law is our first and final security. "[F]rom their own experience and their deep reading in history, the Founders knew that Law alone saves a society from being rent by internecine strife or ruled by mere brute power however disguised." United States v. Mine Workers, 330 U. S 258, 308 (1947) (Frankfurter, J., concurring in judgment).

A corollary to that principle sets the terms for this case: "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest,

are creatures of the law, and are bound to obey it." United States v. Lee, 106 U. S. 196, 220 (1882). We have long lived with the collective understanding that "[decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen," for "[i]n a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously." Olmstead v. United States, 277 U. S. 438, 485 (1928) TRUMP v. UNITED STATES 603 U.S.____(2024)

Notice: These controlling principles are not advisory. They are the binding force of the supreme Law of the Land. By the Supremacy Clause, every officer — judicial, legislative, and executive — is bound to obey them, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." An officer who steps beyond these bounds ceases to act under lawful authority and proceeds only in a private capacity, stripped of immunity and answerable in their own person for every trespass upon the rights of the People.

Any officer now on notice of these controlling principles, yet choosing to act in defiance of them, stands stripped of lawful authority, without immunity, and liable in their private capacity for every injury caused.

## THE GRAND JURY AS THE PEOPLE'S RECOURSE AGAINST OFFICIAL VIOLATION

The Fifth Amendment secures that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury…" This is not a relic of history — it is a living constitutional safeguard that belongs to the People, not to any branch of government.

"The grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It is a constitutional fixture in its own right… In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." United States v. Williams, 504 U.S. 36 (1992)

Let it be understood: the very record of these proceedings — every refusal to uphold the oath, every constitutional claim ignored, every unlawful order entered — is evidence. And that evidence may be carried by the People before a grand jury as proof of willful violation of the supreme Law of the Land.

In persisting, you are not merely erring — you are building your own case file against yourself. The grand jury exists for precisely such lawless disregard: to investigate, to indict, and to bring to account those who would set themselves above the Constitution they swore to defend.

No robe, title, or office will shield you from that reckoning. Once the People convene, the law will speak, and the record you create today will be the record that convicts you tomorrow.

## CONCLUSION

Let this memorial serve not only as a support to the accompanying notice, but as a lawful record and constitutional reminder to all who read it:

The People have not consented to be governed by legislative tribunals or administrative agencies posing as courts. We are not creatures of statute, nor subjects of departmental policy. We are the People from whom all power originates and to whom all actors of government are accountable.

The Constitution remains the supreme law of the land. Judicial power must be exercised according to it—by officers duly appointed, in forums lawfully established, with full adherence to maxims that cannot be overturned by rule or routine.

Where there is no jurisdiction, there is no judge. Where there is no due process, there is no law.

Submitted in peace, in truth, and in law. All rights reserved. No waiver of rights or remedies.

Angeliina Lawson, One of the People                    August 25, 2025

## Memorandum in Support of Certification Under 28 U.S.C. § 1254(2)

*Statutory Construction, Equal Protection, and the Historical Imperative*

This Memorandum is submitted as Exhibit G in support of Appellant's Supplement to the Motion to Certify Constitutional Question (Dkt. 28). It provides a comprehensive legal, constitutional, and historical analysis demonstrating why Title II of the Americans with Disabilities Act (ADA) qualifies as a 'law providing for equal civil rights' under 28 U.S.C. § 1443(1). While not essential to the narrow procedural relief sought in the certification motion, this Exhibit preserves the legal record for appellate and historical purposes. As federal civil rights law evolves beyond the racial frameworks of Reconstruction, this memorandum urges the Court to interpret § 1443(1) in a manner consistent with its text, history, and the demands of contemporary equality.

---

Exhibit G

Legal Analysis: Statutory Interpretation, Equal Protection, and Historical Precedent

This Exhibit is submitted in further support of Appellant's Supplement to Motion to Certify Constitutional Question (Dkt. 28). It preserves for the record additional

statutory, doctrinal, and historical arguments demonstrating why Title II of the Americans with Disabilities Act (ADA) qualifies as a "law providing for equal civil rights" under 28 U.S.C. § 1443(1). While not essential to the narrow certification request, these arguments provide important context for why Supreme Court clarification is urgently required.

## I. The Plain Text of § 1443(1) Encompasses ADA Title II

- Section 1443(1) authorizes removal where a litigant is denied a right under "any law providing for equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof."

- Congress chose deliberately broad language ("any law … equal civil rights") rather than limiting protection to race. Other Reconstruction-era statutes expressly mentioned "race and color," but § 1443(1) did not.

- Title II of the ADA, enacted in 1990, is a comprehensive civil rights law that prohibits exclusion from courts and public services on the basis of disability. It fits comfortably within § 1443(1)'s language.

---

## II. Title II as a Direct Analogue to the Civil Rights Act of 1964

- In *Georgia v. Rachel* (1966), the Supreme Court held that Title II of the 1964 Civil Rights Act was a qualifying "equal civil rights" law under § 1443(1).

- Title II of the ADA is structurally parallel: both statutes confer specific individual rights to nondiscrimination in defined venues (restaurants and accommodations in 1964; public entities, including courts, in 1990).

- Excluding the ADA from § 1443(1) creates a logically indefensible hierarchy between different civil rights statutes.

---

III. Equal Protection Concerns: An Unconstitutional Hierarchy of Rights

- Reading § 1443(1) as race-only creates a two-tiered system: racial equality guarantees qualify for removal, but disability (or religion, national origin, or sex) does not.

- This judicially imposed hierarchy lacks a rational basis. Congress enacted the ADA under its Fourteenth Amendment § 5 power, and *Tennessee v. Lane* confirmed Title II enforces fundamental due process and equal protection rights.

- Denying federal forum access to disabled litigants while granting it to racial discrimination victims raises serious Equal Protection concerns.

## IV. Historical Examples of Judicial Resistance to Expanding Civil Rights

- *Plessy v. Ferguson* (1896): judicial refusal to recognize equal protection until overturned by *Brown v. Board*.
- *Bradwell v. Illinois* (1873): denial of equal professional rights to women, later repudiated.
- *Korematsu v. United States* (1944): sanctioning Japanese-American internment, later discredited.
- These examples illustrate the dangers of courts freezing constitutional guarantees and refusing to extend equal protection to new groups.

## V. Post-1975 Developments Undermine Johnson v. Mississippi's Race-Only Reading

- *Johnson v. Mississippi* (1975) confined § 1443(1) to race-based rights. But that decision pre-dated the ADA and modern disability civil rights framework.

- Congress explicitly described the ADA as a civil rights law, recognizing disabled persons as a "discrete and insular minority" subject to systemic discrimination.
- Supreme Court cases after Johnson—*Tennessee v. Lane*, *United States v. Georgia*, and *Olmstead v. L.C.*—confirm disability rights as constitutional in nature.

---

## VI. Calls for Reevaluation

- Federal appellate judges (e.g., Tenth Circuit in *Currier*, Sixth Circuit in *Winesburgh*) have noted the plain text of § 1443(1) naturally covers disability-based rights, but felt constrained by Johnson.
- Legal scholars and the Department of Justice Civil Rights Division have urged reevaluation of the race-only limitation as inconsistent with modern civil rights law and federal enforcement priorities.
- The analogy to *Maine v. Thiboutot* (1980)—where the Supreme Court broadened 42 U.S.C. § 1983 beyond racial claims to "any rights secured by the laws"—shows how Reconstruction-era statutes must evolve to cover modern civil rights protections.

VII. Conclusion

This supplemental analysis demonstrates that:

- The plain text of § 1443(1) is not race-limited.

- ADA Title II is a paradigmatic civil rights law guaranteeing equal access.

- Exclusion of ADA rights entrenches an unconstitutional hierarchy.

- Historical examples warn against narrow interpretations of equality.

- Post-1975 jurisprudence and scholarship confirm that disability rights are fully within the ambit of "equal civil rights."

For these reasons, this Exhibit supports certification of the question presented to the Supreme Court. Only that Court can reconcile § 1443(1)'s broad text with modern civil rights law and prevent the continuation of a second-class status for disabled litigants.